AO 91 (Rev. 11/11) Criminal Complaint          AUSA Matthew Moyer (312) 353-3148




## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TIMOTHY O'BRYANT,<br>    also known as "Cameron" | CASE NUMBER: 23 CR 460<br><br>**UNDER SEAL** |

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about April 27, 2023, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 922(d)(1) | selling and disposing of a firearm and ammunition to a person knowing and having reasonable cause to believe that such person has been convicted of a crime punishable by a term of imprisonment exceeding one year |

This criminal complaint is based upon these facts:

  X  Continued on the attached sheet.

*Bakir Cocalic*
BAKIR COCALIC
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: August 25, 2023

*Judge's signature*

City and state: Chicago, Illinois      JEFFREY I. CUMMINGS, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, BAKIR COCALIC, being duly sworn, state as follows:

**1.** I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been so employed since approximately October 2021. As part of my duties as an FBI Special Agent, I investigate criminal violations involving narcotics, street gangs, violent crimes and firearms. I was a Kansas City, Missouri Police Officer for six years prior to my assignment as a Special Agent with the FBI. I was assigned to the Kansas City Police Department's Narcotics Division for two years as a narcotics detective. In connection with my official FBI duties, I investigate criminal violations of the Federal controlled substance laws. As a law enforcement officer, I have been involved in multiple narcotics investigations, and as such I am familiar with the various methods used by narcotics traffickers to transport, store and distribute narcotics and narcotics proceeds. I have also received specialized training in the means and methods by which drug trafficking organizations conduct their illegal drug trafficking activities, and in the use of various investigative techniques used to uncover unlawful drug trafficking.

2. This affidavit is submitted in support of a criminal complaint alleging that Timothy O'Bryant, also known as Cameron, has violated Title 18, United States Code, Section 922(d)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging

O'BRYANT with selling and disposing of a firearm and ammunition to a person knowing and having reasonable cause to believe that such person has been convicted of a crime punishable by a term of imprisonment exceeding one year, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) information provided to me by other law enforcement officers, including my review of reports made by other law enforcement officers; (b) information obtained from consensually recorded conversations and in-person meetings;[1] (c) the results of physical surveillance conducted by other law enforcement officers; (d) information provided to me by a confidential informant ("CI")[2]; (e) my review of laboratory

---

[1] Some of the consensually recorded conversations from this investigation are summarized in this Affidavit. The language that is quoted from the recorded conversations throughout this Affidavit is based upon a preliminary review of the recorded conversations, not final transcripts. These summaries do not include all statements or topics covered during the course of the recorded conversations. At various points in the Affidavit, I have indicated (sometimes in brackets) my interpretation of words and phrases used in the recorded conversations. My interpretations are based on information received from confidential source, the contents and context of the recorded conversations, events that took place before and after the conversations, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement agents in this investigation.

[2] The CI has been cooperating with the FBI for monetary compensation for over 10 years. According to an FBI database, the CS has a felony conviction from a period in the late-1990's for a narcotics offense. The CS has been paid, to date, approximately $7,424 by the FBI as a result of his/her cooperation on this case and other cases.

analysis reports; and (f) my training and experience, as well was the training and experience of other law enforcement officers with whom I have consulted.

4. As described below, on or about March 2, 2023 and April 27, 2023, O'BRYANT sold a firearm to CI after being informed the CI is a felon.

## Probable Cause

**A. On or About March 2, 2023, O'BRYANT Sold a Firearm to the CI After Being Informed the CI is a Felon**

5. On or about March 2, 2023, law enforcement met with a CI to do a controlled purchase of a firearm from TIMOTHY O'BRYANT.

6. At approximately 1:14 p.m., law enforcement met with the CI at a previously agreed-upon location and searched him/her and his/her vehicle for contraband, weapons, and excessive money, with negative results. Law enforcement equipped the CI with an audio and video recording device and activated the device. Law enforcement also provided the CI with approximately $1,600 in pre-recorded buy funds.

7. The CI drove in his/her vehicle to the residence at 1714 Lincoln Street in North Chicago, Illinois, which according to the CI, is O'BRYANT's residence. Law enforcement maintained surveillance on CI as s/he drove to 1714 Lincoln Street.

8. At approximately 1:39 p.m., CI placed a recorded call to 224-857-3266.[3] According to the recording, CI informed O'BRYANT that CI arrived. O'BRYANT

---

[3] Law enforcement identified O'BRYANT and O'BRYANT's voice in this affidavit based on the following: On or about March 2, 2023, and April 27, 2023, CI was wearing an audio and video recording device, and met with an individual who law enforcement later determined to be O'BRYANT based on a comparison of the individual's image on the recording and a known photograph of O'BRYANT. Law enforcement has also listened to phone calls recorded

3

directed the CI to go to the back of his house. CI then drove around to the back of 1714 Lincoln Street. According to the recording, O'BRYANT exited through the rear doors of the residence at 1714 Lincoln Street and entered the passenger seat of the CI's vehicle.

9. At approximately 1:49 p.m., according to the video recording, while O'BRYANT was in the CI's car, O'BRYANT appears to be holding, based on my training and experience, the barrel of a handgun in O'BRYANT's hand. O'BRYANT stated that he would keep the bullets from the gun because he needed them. The CI requested that s/he get one bullet. O'BRYANT said, "You aint gonna cause no trouble with this man. Is you man?" CI stated, "Fuck no." OBRYANT stated, "For real...for real...bro. Cause man I don't even sell guns." The CI stated, "You know I'm a fuckin felon just like your fuckin tio [uncle], you know what I'm saying?"

10. Based on my training and experience, at approximately 1:50 p.m., a sound consistent with the sound of a firearm's slide being adjusted can be heard on the audio recording. Based on the angle of the video recording, the gun can not be seen at this point, but based on the movements of O'BRYANT in the video, it appears he is racking the slide of the firearm. O'BRYANT then stated, "right there, boom, slap this in, boom."

---

between CI and whom he identifies as O'BRYANT. Law enforcement listened to audio recording of the March 2, 2023, and April 27, 2023, meetings between CI and O'BRYANT, and determined the voice in recordings of the meetings matches the voice from the recorded calls.

4

11. At approximately 1:50 p.m., the CI stated, "Cause I went down just like fuckin Pablito. You hear me? I'm an ex-felon bro. You know what I'm saying?" O'BRYANT asked, "What'd you get hit with though?" CI stated, "Shit. I got hit with fuckin 10 to 45, class X out of Lake County." O'BRYANT stated, "What'd you do though, like?" CI stated, "Dope." O'BRYANT stated, "Oh, dope."

12. At approximately 1:52 p.m., the recording captured O'BRYANT exiting CI's vehicle.

13. Agents surveilled CI from 1714 Lincoln Street to an agreed-upon location. At the location, the CI provided agents a Taurus TH 9C, semi-automatic handgun, 9-millimeter, brown-in-color with a black slide, Serial Number TMT44488, and one 9-millimeter round of ammunition. Agents searched the CI for contraband, weapons, and excessive currency and found none. CI provided $800 back, as only $800 was used to buy the gun, according to the CI.

**B. On or About April 27, 2023, O'BRYANT Sold a Firearm to CI Knowing CI is a Felon**

14. According to the CI, on or about April 26, 2023, at approximately 5:27 p.m., O'BRYANT sent a photo to CI of a black and silver handgun. According to the CI, at approximately 8:28 p.m., O'BRYANT texted CI, "1k [1,000]." According to the CI, the CI and O'BRYANT had unrecorded phone calls later that night about the time and place for the CI to buy a firearm.

15. On or about April 27, 2023, at approximately 8:59 a.m., law enforcement met with CI at an agreed-upon located and searched him/her and his/her vehicle for contraband, weapons, and excessive currency, with negative results. Law enforcement provided the CI with $1,000 in pre-recorded buy funds. Law enforcement

5

equipped the CI with an audio and video recording device and activated the recording device.

16. At approximately 9:17 a.m., the CI placed a recorded call to 224-857-3266. During the call, CI informed O'BRYANT s/he would arrive in a few minutes to the agreed-upon meeting location, 1645 Victoria Avenue in North Chicago, Illinois. Law enforcement maintained surveillance as the CI traveled to 1645 Victoria Avenue.

17. At approximately 9:26 a.m., the CI arrived at 1645 Victoria Avenue. According to the recording, O'BRYANT entered the CI's vehicle in the passenger seat. CI asked, "You want to count the money, or?" O'BRYANT stated, "No, you good, you good." O'BRYANT then informed CI that the firearm O'BRYANT intended to sell to CI would be brought by another person.

18. At approximately 9:27 a.m., O'BRYANT instructed CI to go to 1714 Lincoln Street, in North Chicago, to meet with the person who had the firearm for CI. CI drove himself and O'BRYANT to 1714 Lincoln Street, as directed. Law enforcement surveilled CI's vehicle as it traveled to 1714 Lincoln Street.

19. Once the CI arrived in his/her vehicle to approximately 1714 Lincoln Street, law enforcement observed a maroon Chevrolet Tahoe arrive at the location. According to the recording, O'BRYANT said, "I'll just leave you my money. I promise to God. No weird shit." CI stated, "I trust you my n****, shit, if not, I know where to find you… There's a thousand [dollars]. I counted it twice, CAM. I'm not gonna touch your money, bro."

20. According to the recording, an unidentified male with an orange jacket and black pants exited the truck. O'BRYANT exited the CI's vehicle and walked towards the man. Approximately two minutes later, the recording captured O'BRYANT running back to CI's vehicle.

21. Based on the recording, O'BRYANT re-entered the CI's vehicle and the recording shows O'BRYANT reaching into his jacket pocket. Based on my training and experience, a noise consistent with the sound of a firearm slide being adjusted can be heard on the audio recording. The CI asked, "full clip?" O'BRYANT affirmed. O'BRYANT then exited the vehicle.

22. CI was surveilled continuously to an agreed-upon location. At the location the CI was searched for contraband, weapons, and excessive currency, with negative results. The CI provided to agents a Springfield XD, 9-millimeter firearm, with serial number XD819997, and a magazine loaded with of rounds of ammunition.

23. According to a law enforcement database search, O'BRYANT is not a licensed firearms dealer.

                                                                   FURTHER AFFIANT SAYETH NOT.

                                                                   *Bakir Cocalic*
                                                                   BAKIR COCALIC
                                                                   Special Agent
                                                                   Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone August 25, 2023.

_____
Honorable JEFFREY I. CUMMINGS
United States Magistrate Judge